**NATIONAL RIGHT TO WORK COMMITTEE, INC., et al.**

v.

**FEDERAL ELECTION COMMISSION, et al.**

**FEDERAL ELECTION COMMISSION,**

v.

**NATIONAL RIGHT TO WORK COMMITTEE, INC., et al.**

**Nos. 80–1487, 80–1488.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 19, 1981.

Decided Sept. 4, 1981.

Certiorari Granted April 5, 1982. See 102 S.Ct. 1766.

---

Richard H. Mansfield III, Washington, D. C., with whom Alan P. Dye, Washington, D. C., and Richard J. Clair were on the brief, for appellants.

Miriam Aguiar, Atty., Federal Election Commission, Washington, D. C., with whom Charles N. Steele, Gen. Counsel, Kathleen Imig Perkins, Asst. Gen. Counsel, and Jeffrey H. Bowman, Atty., Federal Election Commission, Washington, D. C., were on the brief, for appellees.

Before TAMM, Circuit Judge, THORNBERRY, Senior Circuit Judge,* and WILKEY, Circuit Judge.

Opinion for the court filed by Senior Circuit Judge THORNBERRY.

THORNBERRY, Senior Circuit Judge:

The Federal Election Campaign Act of 1971, 2 U.S.C. § 431 *et seq.*, and its subsequent amendments govern federal election campaigns by imposing restrictions on political contributions and expenditures that apply to all participants in the election process. In this appeal, the National Right to Work Committee (NRWC) challenges the constitutionality and application of sections 441b(b)(4)(A) and (C) of the Act, which together prohibit a corporation without capital stock from soliciting contributions from persons other than its members. The district court concluded that, as applied to NRWC, the statutory provisions in question are neither unconstitutionally vague nor overbroad and that NRWC had violated the Act by soliciting persons who were not members of the organization. Because in our view the term "members" as used in § 441b(b)(4)(C) necessarily includes those individuals solicited by NRWC, we reverse the judgment of the court below.

---

* Of the United States Court of Appeals for the Fifth Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

The National Right to Work Committee is a nonprofit corporation without capital stock that was formed to educate the public on and to advocate voluntary unionism. NRWC conducts a continuous and extensive program of advocacy through the dissemination of information on compulsory unionism to its members and to the general public. The Employee Rights Campaign Committee (ERCC) is a separate segregated fund established and maintained by NRWC to receive and expend funds on behalf of federal candidates, and it is registered as such with the Federal Election Commission (FEC).

In November 1977, the FEC began an enforcement proceeding in federal district court, charging that NRWC had violated 2 U.S.C. § 441b(b)(4) of the Federal Election Campaign Act, which declares it unlawful "for a corporation, or a separate segregated fund established by a corporation, to solicit contributions to such a fund from any person other than its shareholders and their families and its executive or administrative personnel and their families...." In defense of its actions, NRWC relied on an exception to that prohibition, which provides that § 441b(b)(4) "shall not prevent a membership organization, cooperative, or corporation without capital stock, or a separate segregated fund established by a membership organization, cooperative, or corporation without capital stock, from soliciting contributions to such a fund from members of such organization, cooperative, or corporation without capital stock." 2 U.S.C. § 441b(b)(4)(C). NRWC contended that the individuals it solicited were members of NRWC within the meaning of this provision.[1] One month earlier, anticipating this enforcement proceeding, NRWC had filed a complaint seeking injunctive and declaratory relief and alleging, among other constitutional challenges, that the term "members" in § 441b(b)(4) was unconstitutionally vague. The cases were consolidated.

The FEC concedes that NRWC can freely solicit contributions from its "members," if it has any within the meaning of § 441b. The Act does not define the term and FEC regulations adopt the standards of the organization, with the caveat that membership requirements cannot consist solely of the requirement that one contribute to the separate segregated fund.[2] The FEC contends that NRWC's articles of incorporation, which state that NRWC has no members, are dispositive. Alternatively, the FEC embraces the district court's definition, which defines "members" as those "who stand in a similar relation to nonstock corporations as shareholders stand to stock corporations and union members stand to labor unions." *FEC v. National Right to Work Committee*, 501 F.Supp. 422, 432 (D.D.C.1980).[3]

1. NRWC attracts members by publicizing its position on issues relating to compulsory unionism through advertisements, personal contacts, and, primarily, letters. These letters describe the purpose of NRWC, urge the recipient to assist NRWC (by, for example, writing to legislators), request financial support, and ask the recipient to respond to a questionnaire that will determine whether that person shares a similar political philosophy. A person who, through his response, evidences an intention to support NRWC in promoting voluntary unionism qualifies as a member. A person who responds without contributing financially is considered a supporting member; a person who responds and also contributes is considered an active member. NRWC sends an acknowledgment and a membership card to both classes. In the regular course of operations, NRWC's members receive newsletters, action alerts, and responses to individual requests for information. They respond to issue surveys and are asked to communicate with their elected representatives when appropriate. *See* Joint App., vol. II, at 387 *et seq.*

2. The regulations governing corporate and labor organization activity provide:

(e) "Members" means all persons who are currently satisfying the requirements for membership in a membership organization, trade association, cooperative, or corporation without capital stock .... A person is not considered a member under this definition if the only requirement for membership is a contribution to a separate segregated fund. Federal Election Commission Regulations, 11 C.F.R. § 114.1(e).

3. The district court continued:

In other words, the term member should not be read to make the membership exception disproportionately broader or narrower than the shareholder exception or the union mem-

■ We see absolutely no justification for applying a state law standard. State definitions of "members" in nonstock corporations for purposes of state corporate or tax law are not likely to take into account the important first amendment considerations at the heart of any controversy surrounding the construction or application of the Federal Election Campaign Act.[4] Further, we are troubled by the fact that the FEC considers the article of incorporation dispositive only if they negate members for purposes of state law, but not if the articles provide for members.[5]

We think that the Act requires a uniform definition. Considering the language of the Act in light of the interests it was designed to serve, however, we conclude that the definition adopted by the district court is so narrow that it necessarily infringes on associational rights. The district court considered NRWC's argument to be in essence an attack on the general proscription on corporate spending in § 441b(a), 501 F.Supp. at 437, and the court therefore focused only on the constitutionality of this general rule. The court found the state interest in avoiding the appearance or actuality of corruption sufficiently compelling to sustain the restrictions on corporate spending and summarily concluded that "NRWC's associational rights claim falls before the same

compelling interest." *Id.* at 438. By focusing on the general proscription rather than the more narrow provisions that are actually at issue in this case, the court neglected to consider important factors that distinguish, first, solicitation from contributions and expenditures and, second, non-stock corporations organized solely for political purposes from stock corporations. These factors suggest that neither of the interests advanced by the FEC can justify the restrictions on NRWC's solicitation activities.

The first amendment clearly protects political expression in the form of association and solicitation. *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980).[6] But these activities are not protected absolutely, and they may be regulated if the state demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational rights. *Buckley v. Valeo*, 424 U.S. 1, 25, 96 S.Ct. 612, 638, 46 L.Ed.2d 659 (1976). The district court correctly noted the primary objective of the Federal Election Campaign Act: the elimination of corruption and the appearance of corruption in the federal election process.[7] *Id.* The restrictions imposed by

---

ber exception. "Member" thus encompasses persons who have interests and rights in an organization similar to those of a shareholder in a corporation and a union member in a labor organization. To read the exception more broadly would be to upset the symmetry of the statutory scheme. 501 F.Supp. at 432.

4. NRWC is incorporated under Virginia law. Official recognition of members in the articles of incorporation would have required NRWC to hold an annual meeting of all members, a prohibitively expensive requirement (and one, in our view, that serves no purpose in the context of a corporation organized not for profit or other business purposes, but for the promotion of a political philosophy). *See* Va.Code § 13.1–213.

5. We note that during conciliation, NRWC offered to amend its articles of incorporation, but the FEC conditioned acceptance of that offer on the requirement that NRWC take additional undefined "other steps" to become a member-

ship organization. We are inclined to agree with NRWC that the FEC has barricaded itself behind NRWC's articles of incorporation throughout this litigation and has avoided the core problem of defining the terms "member" and "membership organization."

6. "[G]roup association is protected because it enhances '[e]ffective advocacy.' The right to join together 'for the advancement of beliefs and ideas' is diluted if it does not include the right to pool money through contributions, for funds are often essential if 'advocacy' is to be truly or optimally effective." *Buckley v. Valeo*, 424 U.S. 1, 65–66, 96 S.Ct. 612, 657, 46 L.Ed.2d 659 (1976) (citations omitted).

7. The appearance and reality of corruption stem from the real or imagined pressure imposed upon political candidates by those who contribute heavily to their campaigns. Thus,

the primary interest served by . . . the Act as a whole . . . is the prevention of corruption and the appearance of corruption spawned

§ 441b on corporations and labor organizations, as well as insulating the political process from the deleterious influence of aggregated wealth, serve the additional objective of protecting dissenting minority interests from being coerced into supporting political philosophies to which they do not adhere or which they may not wish to promote. *Pipefitters Local Union No. 562 v. United States*, 407 U.S. 385, 414–415, 92 S.Ct. 2247, 2264, 33 L.Ed.2d 11 (1972); *see also United States v. United Automobile Workers*, 352 U.S. 567, 570–84, 77 S.Ct. 529, 530, 1 L.Ed.2d 563 (1957); *United States v. Congress of Industrial Organizations*, 335 U.S. 106, 113, 68 S.Ct. 1349, 1353, 92 L.Ed. 1849 (1948).

As to the first interest, we believe that solicitation, without more, will neither corrupt officials nor distort elections.[8] In our view, contribution limitations and disclosure provisions are a more direct and less restrictive way to prevent or at least to expose any sort of *quid pro quo* arrangements. As to the second interest, the individuals from whom NRWC solicits contributions, unlike employees of a corporation or members of a labor union, clearly are not subject to coercion.[9] We therefore fail to see how the interests asserted by the FEC are served by restricting NRWC's solicitation activities.

The FEC argues that *Bread Political Action Committee v. FEC*, 635 F.2d 621 (7th Cir. 1980) (en banc), *cert. granted,* 453 U.S. 921, 101 S.Ct. 3157, 69 L.Ed.2d 1004 (1981), supports its position. There, the court considered and rejected a challenge to another exception, paragraph (D) of § 441b(b)(4), which parallels the exception in paragraph (C), and permits a trade association or its segregated political fund to solicit contributions from the stockholders and executive and administrative personnel of its member corporations and their families provided that the solicitation has been approved by the member corporation. The plaintiffs in *Bread* complained that the avenue of solicitation allowed them under paragraph (D) was too limited to withstand constitutional scrutiny. The court of appeals upheld the constitutionality of paragraph (D) as a "very narrowly drawn aspect of a statutory scheme carefully designed to balance a compelling governmental interest and jealously guarded First Amendment freedoms." *Id.* at 629.

In our view, paragraph (D) does nothing more than ensure that trade associations will not provide a vehicle through which member corporations can avoid the restrictions on corporate solicitation in paragraph (4)(A)(i). Assuming that the (4)(A)(i) restrictions as applied to stock corporations withstand constitutional scrutiny, an issue not before us and one that we do not decide, it would seem that a provision such as paragraph (D) narrowly drawn to prevent the avoidance of those restrictions would withstand a similar challenge. But even if we assume that the interest in preventing coer-

by the real or imagined coercive influence of large financial contributions on candidates' positions and on their actions if elected to office.

. . . .

To the extent that large contributions are given to secure a political *quid pro quo* from current and potential office holders, the integrity of our system of representative democracy is undermined.

Of almost equal concern . . . is avoiding the appearance of corruption.

*Buckley v. Valeo,* 424 U.S. at 25–27, 96 S.Ct. at 638.

**8.** It is not the aggregation of wealth but the distribution of it that may distort the political process. Further, we note that although Congress was concerned with the deleterious effects of aggregated wealth, "the aggregated wealth it plainly had in mind" was that in general purpose union or corporate treasuries,

not funds donated by individuals "of their free and knowing choice." *See Pipefitters Local Union No. 562 v. United States,* 407 U.S. 385, 416, 92 S.Ct. 2247, 2265, 33 L.Ed.2d 11 (1972).

**9.** Corporations and labor organizations have primary responsibilities to shareholders and union members that are unrelated to wholesale participation in the electoral process. The solicitation provisions perhaps help to ensure that corporations and labor organizations attend first to those primary responsibilities. Further, § 441b(b)(4)(A) restricts corporations and labor organizations to the solicitation of those individuals likely to be harmed by corporate or union overindulgence in the political arena. None of these considerations arises in the context of a non-stock corporation organized not for profit but to advance a particular political philosophy.

cion of a dissenting stockholder or union member is compelling enough to warrant the restrictions imposed by § 441b(b)(4)(A) on stock corporations and labor unions, this interest is not served by restricting the solicitation activities of a non-stock corporation organized solely for political purposes. The FEC's reliance on the *Bread* decision is therefore misplaced.

 The NRWC operation, in our view, ensures that NRWC accurately identifies and solicits only those individuals who share a similar political philosophy and who have evidenced a willingness to promote that philosophy through support of the Committee. *See* note 1 *supra.* The interests advanced by the FEC are indeed compelling, but the FEC has failed to demonstrate how those interests are served by prohibiting the solicitations at issue in this case. Absent the exception provided by subsection (C), then, we would seriously question the constitutionality of subsection (A) as applied to NRWC. We therefore hold that the term "members" in § 441b(b)(4)(C) embraces at least those individuals whom NRWC describes as its active and supporting members, reversing the judgment of the court below.

*Reversed.*